## CHICAGO PORTRAIT Co. *v.* MADDOX

[73 South. 278, Division B.]

PRINCIPAL AND SURETY. *Action on surety bond. Evidence.*

In an action by a portrait company on a bond of its district manager given for the faithful performance of his contract, plaintiff made out a *prima-facie* case for recovery when it showed the balance due from the manager and no extension of time without the consent of the sureties or other action releasing them from the bond.

APPEAL from the circuit court of Lincoln county.

HON. J. B. HOLDEN, Judge.

Suit by the Chicago Portrait Company against J. W. Maddox and others. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Brady & Dean,* for appellee.

Appellant, knowing as does this court, the legal learning and ability of appellees' counsel, is constrained to believe that the cases cited on page 5 of appellee's brief in support of their man of straw were not read before being inserted, for the rules therein announced fit absolutely appellant's contention on this record. We cite: "That sureties upon a bond given by an employee to his employer, conditioned that the former will faithfully account for all moneys and property of the latter coming in to his hands, are not discharged from subsequent liability by an omission on the part of the employer to notify them of a default on the part of their principal known to the employer, and a continuance of the employment after such default, in the absence of evidence of fraud and dishonesty on the part of the employee." 21 Am. Rep. 321.

The evidence of fraud and dishonesty is patently absent from this record. The agent of a corporation,

being under bond to account and pay over daily, cannot be trusted with more money at his surety's risk after dishonesty of the agent is discovered by the corporation. But he may be so trusted so long as the circumstances, fairly interpreted point, not to moral turpitude, but to want of diligence or punctuality rather than to want of integrity." 27 Am. Rep. 402.

Here there is no evidence of dishonesty, and any interpretation of circumstances is for the jury and not the court. To the same effect is 10 So. 539.

The argument with reference to application of credits beginning on page 5 of appellee's brief has been somewhat anticipated on page 3 herein.

Apellees have taken a stated principle of law, knocked an "*if*" from in front of it, then stretched the facts of this reecord to meet their new-born proposition. 32 Cyc. 172 says: "*IF*" neither the creditor nor the principal has made any application of a payment made by the latter, and their transaction afterward become a matter of judicial adjustment, the court will apply the payment as equity seems to require, usually to the oldest item, unless the conduct of the parties indicates the payments by the principal were to be credited to later items. In some cases application will be made ratably among different debts."

This is widely different from "The rule as to the application of payments is left largely to the discretion of the trial court to be applied according to the equity and justice of the case," as is laid down on page 6 of appellee's brief.

The cases cited all have to do with credits on one account, or with limitation, or with principles even further afield than those matters. According to appellee's contention, their account ceased at a certain point, and another account began with which they had nothing to do. Now, they will take every credit of the second account (not just a credit balance) to apply to the balance due on the first totally disconnected account.

Who says that there has never been any exact and accurate account submitted or disclosed to the court? Appellees in their brief. What do they call an account where every debit and credit item during a period of years is plainly and clearly set down, with its true and proper date? Is it wrong? Where is their proof? Did their liability cease at a certain point? Then indebtedness for which they are liable is readily ascertainable. Were other articles of value turned over to Maddox thereafter? Then they are not liable for them, and they cannot be charged with them. When Maddox accounted for those later entrusted articles, is the entire credit side of that statement to be credited to them? Not much; yet that is their claim analysed.

*J. W. McNair, J. A. Naul* and *Jones & Tyler,* for appellee.

If the company was dealing fairly with the sureties why did they not keep them advised of these tremendous and heavy accounts which they held against Maddox? If good faith did not require this notice common business prudence did and the plaintiff in continuing Maddox in its employment after these large sums of money became due and extending to him time for their payment and allowing Maddox an oppertunity to work and redeem himself released the securities. This was an extension of time without the consent of the sureties and operated as their release. *Govan* v. *Binford,* 25 Miss. 151; *Picard* v. *Shantz,* 70 Miss. 381.

The change of employment from district manager to that of crew foreman terminated the contract with these sureties and they cannot be held liable for shortage occurring after this change of employment. The duties of a district manager were evidently different from the duties of a crew foreman. If the duties were different then it required a new contract and any contract to which the sureties were not a party

and not contemplated and covered by the terms of their bond cannot be binding on them.

Nothing is said about changing from one position to another in the contract of suretyship and the rule with reference to the liability of sureties is *strictissimi juris.*

In the case of continuing suretyship for the honesty of a servant, if the master discovers that the servant has been guilty of dishonesty in the service, and if, instead of dismissing him, he continues him in his employ without the consent of the surety, express or implied, the latter is not liable for any loss arising from the dishonesty of the servant during the subsequent employment. This rule applies as well to a private corporation as to an individual, when its agent in the discharge of his duties, discovers the dishonesty of the servant, and having authority, fails to give notice of such dishonesty to the surety, and the corporation thereafter retains the servant in its employ. *Saint* v. *Wheeler & Wilson Mfg. Co.,* 95 Ala. 362, 10 So. 539 and 36 Am. St. Rep. 210; *R. R. Co.* v. *Dow,* 59 Ga. 685, 27 Am. Rep. 403; *Telegraph Co.* v. *Barnes,* 64 N. Y. 385, 21 Am. Rep. 621.

But it appears to have been if the retention of the principal did not operate as a release, to the advantage of the sureties that he was retained. In the first place the servant could not have become so heavily involved if the plaintiff had shown the necessary diligence, but in the next place the shortage was discovered. On September 17, 1907, it appears to have been one thousand, four hundred and ninety-eight dollars and eighty-one cents. Maddox was not discharged but continued until in September 29, 1908, when he tried to resign. It does not appear what he owed at this time, but on November 14, 1908, the debt was fourteen thousand, four hundred and forty-one dollars and nine cents, he is said to have disappeared, but on June 12, 1909 he owed one thousand, nine hun-

dred and sixty-six dollars. On March 25, 1901, he owed one thousand sixty-nine dollars and forty-five cents.

Taking any of these dates, or taking the date of the last item shown in the account sued upon which is September 10, 1910, it is shown by the testimony that there was paid by Maddox to the plaintiff the sum of two thousand nine hundred and thirty-six dollars and ninety-three cents, after the shortage is and was discovered. See answer of witness to thirty-seventh interrogatory. The sureties are entitled to have these credits applied so as to be most beneficial to them and to the oldest items in the account. So applied, the payments far exceed the amount of Maddox shortage at any time and they also exceed the amount of the penalty in the bond and the sum which the sureties agreed to become responsible for. 32 Cyc. 172; *Ida County Savings Bank* v. *Sendenstricker,* 128 Iowa 54, 111 Am. St. Rep. 189; 2 Am. & Eng. Ency. L. (2 Ed.), 462; *Fletcher* v. *Gillan,* 62 Miss. 8; *Mortimer* v. *Mc-Kay,* 1 Miss. 585; *Miller* v. *Leflore,* 32 Miss. 634.

STEVENS, J., delivered the opinion of the court.

This is a suit upon a bond executed by J. W. Maddox, district manager of the Chicago Portrait Company, as principal, and Carroll Bardwell, J. I. Smith, and C. W. Maxwell, residents of Lincoln county, Miss., sureties. The bond was given to secure the faithful performance and execution of a certain contract between Maddox and the Chicago Portrait Company, designated "a district manager's contract." The Chicago Portrait Company instructed this suit as plaintiff in the court below to recover the balance of an indebtedness due it by Maddox. When the plaintiff rested its case the defendant sureties moved to exclude the testimony and to grant them a peremptory instruction. This motion was by the court sustained,

and judgment accordingly was entered in favor of the defendants, and from this judgment appellant appeals. A detailed statement in this opinion of the pleadings and the evidence would be burdensome and very uninteresting. It is sufficient to saw that we have read the record and the undisputed testimony calls for a denial and is sufficient to put the defendants to proof. The testimony of the plaintiff does not admit or show an extension of time without the consent of the sureties, and there is no admission of fraud or such bad faith as would estop the plaintiff. We see nothing in the contract denying to the parties the right to change the territory in which Maddox was to operate without the consent of the sureties. There is nothing in the contract, or the proof, to show any obligation on the part of the Chicago Portrait Company to notify the sureties of the monthly balances due by Maddox. There was manifestly much delay on the part of Maddox from time to time in making payments upon his running account, but these delays indicate nothing more than indulgences on the part of the creditor, and should not operate as a release of the sureties. There were no representations made by the Chicago Portrait Company to the sureties to induce them to sign the bond. The sureties signed at the solicitation of Maddox, and not of the plaintiff. It may be conceded that the sureties undertook much when they undertook to answer for the default of their principal growing out of transactions in another state, but there is nothing in the contract or the bond itself to restrict these operations to Mississippi. It was a hard contract for the sureties, and possibly their testimony may disclose to the satisfaction of the jury a perfect defense. As the bond has been written and denominated by the parties, so must it be.

*Reversed and remanded.*